UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
SUBHAS CHANDRA, MD,                              :

                  Plaintiff,                    :        09 Civ. 6619 (RMB) (GWG)

     -against-                                   :        REPORT AND
                                        RECOMMENDATION

BETH ISRAEL MEDICAL CENTER,             :
and I. MICHAEL LEITMAN, MD,

                                  :
                  Defendants.
-------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

       Plaintiff Subhas Chandra brings this action pursuant to Title VII of the Civil Rights Act

of 1964, 42 U.S.C. § 2000e-2(a) ("Title VII"), and the Civil Rights Act of 1866, 42 U.S.C.

§ 1981, alleging that defendants Beth Israel Medical Center ("Beth Israel") and I. Michael

Leitman discriminated against him on the basis of his national origin.  Beth Israel and Leitman

have moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  For the

reasons stated below, the defendants' motion should be denied.

I.      <u>BACKGROUND</u>

      A.    <u>Facts</u>

       The following facts are alleged in Chandra's second amended complaint and are assumed

to be true for the purposes of this motion.  Chandra is of Indian ethnicity, ancestry, and national

origin.  Second Amended Complaint, filed June 30, 2010 (Docket # 53) ("Second Am. Compl.")

¶ 7.  Chandra received medical training in India, <u>id.</u> ¶ 10, and immigrated to the United States in

1994, where he passed the United States Medical Licensing Exam, <u>id.</u> ¶ 12.  Between 2002 and

2003, he was employed as a "preliminary resident" in Beth Israel's Department of Surgery.  <u>Id.</u>

¶ 13.  Preliminary residents, unlike "categorical resident[s]," are not guaranteed employment for

their entire residency.  Id. ¶¶ 14, 16.  Because Beth Israel did not have an available second-year

position for Chandra when he completed the first year of the residency program, Chandra

obtained a position as a second-year preliminary surgical resident at Montefiore Medical Center.

Id. ¶ 17.

Chandra worked in the United States on a J-1 visa.  Id. ¶ 18.  Immigration laws prohibit

doctors with such a visa from remaining in the United States for more than two years as a

preliminary resident.  Id.  A doctor with a J-1 visa must either obtain a categorical residency or

"a third-year preliminary residency with a promise from the hospital that the doctor will have a

categorical residency available to him in the subsequent year," or "return to his country for two

years before returning to the United States."  Id.  Chandra interviewed for a categorical residency

at Beth Israel in 2005.  Id. ¶ 20.  During the interview Dr. Burton G. Surick, Associate Residency

Program Director in Beth Israel's Department of Surgery, told Chandra that the surgery

residency program was "in really bad shape" and that the hospital was "looking mainly for

American graduates . . . ."  Id. ¶¶ 20-21 (internal quotation marks omitted).  This position was

reiterated to Chandra during a follow-up telephone conversation with Carol Polanish, Program

Coordinator.  Id. ¶ 22. Nonetheless, Chandra was hired by Beth Israel in the spring of 2005.  Id.

¶ 24.  He was the only foreign-born categorical resident in the Department of Surgery at this

time.  Id.

Chandra alleges that "[a]lmost immediately . . . [he] observed a discriminatory animus by

the attending doctors . . . toward foreign-born and/or Indian categorical residents . . . [and that he

was] subjected to substantially . . . more criticism, supervision, and negative comments from the

Department's faculty than his two Caucasian American counterparts."  Id. ¶¶ 25-26.  In his first

week of employment, Dr. Andrew Y. Lo, a faculty member and attending surgeon, said to

2

Chandra: "[Y]ou know, if you don't do well, they're going to kick you out of the program." Id.
¶ 25 (internal quotation marks omitted).

In March 2006, Leitman informed Chandra that he had not performed well on the 2006
"ABSITE exam," id. ¶ 29, an exam "designed to measure the progress of resident doctors and
ensure that they are being trained properly by the hospital for which they are working," id. ¶ 27.
As a result of his performance on the exam, Chandra was put on probation and required to
complete 12 tutorial sessions with the Department's attending surgeons in order to advance to
the fourth year of the program. Id. ¶¶ 29-30. Chandra alleges that these actions were contrary to
the Accredited Counsel for Graduate Medical Education ("ACGME") guidelines and not
imposed upon a Caucasian-American resident at Beth Israel who had also performed poorly on
the ABSITE exam. Id. ¶ 29. Despite Beth Israel's assertion that Chandra did not perform well
on these tutorials – an assertion that Chandra contests – Beth Israel allowed Chandra to continue
as a categorical resident in the fourth year of the residency program. Id. ¶¶ 31-32. Chandra was
kept on probation, however. Id. ¶ 32.

Chandra asserts that during his fourth year, Dr. Surick, Dr. Lo, and Dr. Antonio I. Picon
"continued to issue . . . unfounded negative evaluations of his performance." Id. ¶ 33. Chandra
claims that on one occasion Dr. Picon said to him, "you're stupid and you don't know anything,"
while on another occasion Dr. Lo said, "you Indian residents think you're so smart, but you're
really not." Id. ¶¶ 33-34.

Chandra again performed poorly on the 2007 ABSITE exam which he asserts was due to
a lack of training by the faculty at Beth Israel. Id. ¶ 36. Because of his poor performance,
Chandra was informed by Leitman that it might be in his best interest to take a year off from the
residency program in order to complete a fellowship in critical care. Id. ¶ 37. Chandra alleges

that this suggestion was contrary to ACGME guidelines and was not imposed upon American-born residents who had also performed poorly on the ABSITE exam. Id. ¶¶ 37-38. In order to obtain a fellowship in critical care, Chandra alleges that he needed a letter from Leitman guaranteeing him a position as a fifth-year in the Beth Israel residency program. Id. ¶ 40. Chandra was offered a fellowship by Ohio State but because Leitman refused to issue this letter Chandra was not able to accept the position. Id. ¶¶ 41-43. Leitman instead suggested that Chandra repeat the fourth year of his residency at another institution before returning to Beth Israel. Id. ¶ 43. Chandra offered to repeat his fourth year at Beth Israel but Leitman refused this offer. Id.

In May 2007, Leitman required that Chandra be admitted to the psychiatric ward at Beth Israel for 24 hours of suicide watch, an action that Chandra alleges was taken in order to make it appear as though he was unfit for the residency program. Id. ¶ 44. In June 2007, Chandra spoke with Gale Cantor, Director of Beth Israel's Graduate Medical Education Program, about appealing Leitman's decision to require him to repeat his fourth year at another hospital. Id. ¶ 47. Cantor told Chandra that it was her understanding that he had resigned from the program and that she would speak with Leitman. Id.

The following day Chandra met with Leitman who asked him to sign a resignation letter dated June 13, 2007. Id. ¶ 49. When Chandra refused to resign Leitman informed him that his contract would not be renewed at the end of his fourth year. Id. ¶ 50. Chandra alleges that Leitman failed to renew the contract of another surgical resident of Indian origin when he was employed at Lenox Hill Hospital and that he refused to sign the Board application of an Indian-American resident, which prevented her from taking her medical Boards. Id. ¶ 51. Chandra alleges that as a result of Leitman's actions he was not able to obtain a visa renewal and thus

could not complete his residency in the United States.  Id. ¶¶ 39, 40, 43, 52.

Chandra appealed Leitman's decision to an internal review committee comprised of Beth Israel faculty.  Id. ¶ 53.  The hearings "took place over four or five sessions spanning a number of months."  Id. ¶ 54.  Chandra lost his appeal due to what he alleges was the "presentation of false evidence against him."  Id. ¶¶ 53-54.  Chandra also lost his subsequent appeal of the committee's decision.  Id. ¶ 55.  Chandra asserts that during this appeal one of Beth Israel's trustees said to him, "'maybe you should just go back to India' (paraphrased)."  Id.

B.    Procedural History

Chandra commenced this action as a pro se plaintiff through a complaint dated June 25, 2009.  See Complaint, filed July 27, 2009 (Docket # 2).  On July 24, 2009, his request to proceed in forma pauperis was granted, see Request to Proceed In Forma Pauperis, filed July 27, 2009 (Docket # 1) ("IFP Request"), and on August 6, 2009, he filed an amended complaint, see Amended Complaint, filed Aug. 6, 2009 (Docket # 3).  On April 7, 2010, Beth Israel and Leitman filed a motion to dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6).  See Notice of Motion to Dismiss, filed Apr. 7, 2010 (Docket # 34); Affidavit of Daniel A. Cohen, filed Apr. 7, 2010 (Docket # 35); Memorandum of Law in Support of Defendants' Motion to Dismiss the Amended Complaint, filed Apr. 7, 2010 (Docket # 36). Chandra subsequently retained counsel, and on June 23, 2010, this Court granted Chandra's request, through his newly retained counsel, to file a second amended complaint, see Order, filed June 23, 2010 (Docket # 52).  Chandra filed the second amended complaint on June 30, 2010, see Second Am. Compl., and on July 15, 2010, Beth Israel and Leitman filed the instant motion to dismiss, see Notice of Motion to Dismiss Second Amended Complaint, filed July 15, 2010 (Docket # 58) ("Notice of Motion"); Affidavit of Daniel A. Cohen, filed July 15, 2010 (Docket #

5

59); Memorandum of Law in Support of Defendants' Motion to Dismiss the Second Amended

Complaint, filed July 15, 2010 (Docket # 60).  Chandra filed a memorandum of law in

opposition to this motion, see Plaintiff's Memorandum of Law in Opposition to Defendants'

Motion to Dismiss the Second Amended Complaint, filed Aug. 12, 2010 (Docket # 62), and Beth

Israel and Leitman filed reply papers, see Reply Memorandum of Law in Further Support of

Defendants' Motion to Dismiss the Second Amended Complaint, filed Sept. 24, 2010 (Docket

# 63) ("Def. Reply Mem."); Reply Affidavit of Daniel A. Cohen, filed Sept. 24, 2010 (Docket #

64) ("Cohen Reply Aff.").

II.      DISCUSSION

        Beth Israel and Leitman argue that Chandra's complaint should be dismissed both under

the doctrine of primary jurisdiction and because Chandra allegedly violated the federal in forma

pauperis ("IFP") statute, 28 U.S.C. § 1915(e)(2)(A).  We discuss each issue separately.

        A.       Primary Jurisdiction

        Under New York law, a hospital may terminate a physician or resident's privileges only

for reasons related "to standards of patient care, patient welfare, the objectives of the institution

or the character or competency of the [physician or resident]."  N.Y. Pub. Health Law

§ 2801-b(1).  N.Y. Pub. Health Law section 2801-b permits a physician whose hospital

privileges have been terminated to file a complaint with the New York State Public Health

Council ("PHC"), which is then bound to investigate the case and, if it credits the physicians

claims, "direct" that the hospital "make a review of" its actions.  Id. § 2801-b(3).   Under New

York law, in a subsequent court proceeding the PHC's findings are "entitled to prima facie effect

. . . in sensible recognition of the PHC's special competence over medical care issues."  Gelbard

v. Genesee Hosp., 87 N.Y.2d 691, 697 (1996) (citation omitted).  Defendants argue that the

doctrine of primary jurisdiction requires Chandra to bring the dispute regarding the termination of his privileges to the PHC before bringing suit in this Court.

The doctrine of primary jurisdiction "comes into play whenever enforcement of [a] claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body . . . ." Johnson v. Nyack Hosp., 964 F.2d 116, 122 (2d Cir. 1992) (internal quotation marks and citation omitted). "The doctrine of primary jurisdiction is, however, a discretionary doctrine that will be applied only where it serves at least one of two purposes: 'uniformity' and 'reliance on administrative expertise.'" Deshpande v. Medisys Health Network, Inc., 2008 WL 2004160, at *2 (E.D.N.Y. May 7, 2008) (quoting Tassy v. Brunswick Hosp. Ctr., Inc., 296 F.3d 65, 68, 72 (2d Cir. 2002)) (additional citation omitted). Consequently, "courts have resisted creating any fixed rules or formulas for its application. Rather, [i]n every case the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation." Tassy, 296 F.3d at 68 (internal quotation marks and citation omitted) (alteration in original).

In considering a doctor's claim that a hospital had improperly terminated his privileges based on race, the Second Circuit in Tassy held that the first purpose of the doctrine – "uniformity" – was inapplicable. It noted that the case did not involve either "a regulatory scheme nor a rate structure." 296 F.3d at 69. Instead, Tassy concluded that because the claims of race discrimination presented "'a unique and narrow factual dispute that pose[d] no risk of inconsistent interpretations' of any broadly applicable rule or policy, the desire for uniformity [did] not support the application of the primary jurisdiction doctrine." Id. (quoting Nat'l Commc'ns Ass'n, Inc. v. Am. Tel. & Tel. Co., 46 F.3d 220, 225 (2d Cir. 1995)).

With respect to the "reliance on administrative expertise" prong of the doctrine, district courts have recognized that a physician need not file a complaint with the PHC in discrimination cases "where the physician seeks damages, but not reinstatement, and where the presence or absence of a proper medical reason for terminating the plaintiff's privileges is not dispositive of the plaintiff's claims." Deshpande, 2008 WL 2004160, at *2 (internal quotation marks and citations omitted); accord Bauman v. Mount Sinai Hosp., 452 F. Supp. 2d 490, 500 (S.D.N.Y. 2006); Mahmud v. Bon Secours Charity Health Sys., 289 F. Supp. 2d 466, 473 (S.D.N.Y. 2003). Defendants argue that these courts are incorrect insofar as they require that the medical reason for terminating the plaintiff's privileges must be "dispositive" of the plaintiff's claims in order for the doctrine to apply. Def. Reply Mem. at 8-10. To support this view, defendants assert that in Johnson, which involved a suit by a doctor under the antitrust laws, the existence of legitimate medical reasons to extinguish the doctor's privileges "did not guarantee that the hospital would prevail . . . ." Def. Reply Mem. at 10 (citing Johnson, 964 F.2d 116). In fact, in Johnson the Second Circuit stated just the opposite, concluding that "Johnson [could not] prevail on his antitrust claim if defendants had legitimate medical reasons to terminate his surgical privileges at Nyack." 964 F.2d at 121. By holding that the primary jurisdiction doctrine applies only when a legitimate medical reason for the termination is a "complete defense" to the physician's claim, Johnson made clear that the medical reasons for termination must be dispositive of the plaintiff's claim in order for the doctrine to apply. Id. (finding the doctrine applied in Johnson's case because whether the defendants had a proper medical reason for terminating Johnson's surgical privileges would be "dispositive" of Johnson's claims).

As to the application of the standard here, defendants argue that because plaintiff's medical competence is "potentially" dispositive of his claim, Def. Reply Mem. at 13, the

8

primary jurisdiction doctrine applies.  That is not the correct standard, however.  Rather the question is whether Chandra's alleged medical failings would be a "complete defense" to the suit.  Johnson, 964 F.2d at 121.  Chandra could potentially prevail on his claim even if the hospital had legitimate medical reasons for its actions.  For example, Chandra could show that physicians with similar failings were not terminated or were given additional opportunities for remediation before they were terminated.

Thus, if Chandra "'prevails by showing that discrimination was a motivating factor'" in his dismissal, he can "'invite the jury to ignore the defendant[s'] proffered legitimate explanation and conclude that discrimination was a motivating factor . . . .'"  Henry v. Wyeth Pharm., Inc., 616 F.3d 134, 156 n.5 (2d Cir. 2010) (quoting Fields v. N.Y. State Office of Mental Retardation & Developmental Disabilities, 115 F.3d 116, 121 (2d Cir. 1997)), petition for cert. filed (U.S. Nov. 2, 2010) (No. 10-669); accord Dawson v. Bumble & Bumble, 398 F.3d 211, 216 (2d Cir. 2005) ("plaintiff 'must be afforded the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons but were a pretext for discrimination'") (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000)).  This principle was recognized in Hamad v. Nassau Cnty. Med. Ctr., 191 F. Supp. 2d 286, 298 (E.D.N.Y. 2000), in which a physician alleged that he was terminated and his hospital privileges suspended in violation of Title VII and the Age Discrimination in Employment Act, among other statutes.  Id. at 292.  The court refused to apply the doctrine of primary jurisdiction on the ground that "even if [the] PHC finds that defendants had a legitimate reason for the termination of [the physician's] surgical privileges, [the physician] may still prevail in this action if he can prove that the proffered reasons were merely pretext for discrimination."  Id. at 298

9

(citation omitted).[1]

Defendants argue that Beth Israel's grounds for terminating plaintiff are "dispositive" because in order to make out a prima facie case of employment discrimination Chandra must demonstrate that he was "qualified" to be a surgery resident.  Def. Reply Mem. at 11 (emphasis omitted).  But to meet the "qualified" standard "all that is required is that the plaintiff establish basic eligibility for the position at issue, and not the greater showing that he satisfies the employer," Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 92 (2d Cir.), cert. denied, 534 U.S. 951 (2001); accord Gregory v. Daly, 243 F.3d 687, 696 (2d Cir. 2001) – a burden that has been characterized as "de minimis," Gregory, 243 F.3d at 697 n.9.  Defendants make no showing that the function of the PHC is to determine such "basic eligibility" criteria for particular employers.  Slattery, 248 F.3d at 92.

Defendants contend that Title VII eliminates any obligation to pay damages if defendants demonstrate "that they would have made the same decision even in the absence of" discriminatory intent.  Def. Reply Mem. at 14 (citing 42 U.S.C. § 2000e-5(g)(2)(B)).  But once again there is no evidence that it is the function of the PHC to inquire into what a hospital

---

[1] Defendants note that Tassy declined to apply the doctrine after pointing to the fact that the reason for the doctor's termination was unrelated to medical care.  Def. Reply Mem. at 6-7 (citing Tassy, 296 F.3d at 70-71).  From this premise defendants surmise that Tassy implicitly held that any reason for termination related to medical care necessarily invokes the doctrine of primary jurisdiction.  Def. Reply Mem. at 6-7.  But the mere fact that Tassy found that a lack of a medical reason for termination did not implicate the primary jurisdiction doctrine does not mean that the existence of such a reason was by itself sufficient to invoke the doctrine.

Defendants also rely on the case of Mahmud, 289 F. Supp. 2d 466, which found that the primary jurisdiction doctrine applied on the ground that the outcome of PHC review "may be . . . determinative" of plaintiff's civil rights claims.  Def. Reply Mem. at 13-14 (citing Mahmud, 289 F. Supp. 2d at 475).  We cannot reconcile the Mahmud decision, however, with Second Circuit case law requiring that the decision be "dispositive" of, or a "complete defense" to, the plaintiff's claims, Johnson 964 F.2d at 121.  Thus, we respectfully decline to follow Mahmud.

10

"would have" done in the absence of proven discriminatory intent.  Just because the PHC could

find that there were objectively valid reasons for plaintiff's termination does not mean that the

employer applied such reasons uniformly to all its employees regardless of national origin.

Finally, defendants seem to complain that Chandra's claims about what he might prove

are "mere allegations," Def. Reply Mem. at 13, and that any evidence that Chandra may offer in

this case to counter the defendants' reasons "might be . . . insufficient," id.  But the defendants

have pointed to no case that requires a plaintiff to marshal admissible evidence prior to discovery

to support his claims.

Accordingly, the doctrine of primary jurisdiction does not apply to this case.[2]

B.      In Forma Pauperis

Separately, defendants argue that this Court is required to dismiss Chandra's complaint

because Chandra misrepresented his financial condition in requesting to proceed IFP in violation

of 28 U.S.C. § 1915(e)(2)(A).  Specifically, defendants assert that Chandra failed to disclose that

he received approximately $12,000 during the twelve months preceding his completion of the

IFP application and that his family owns businesses allegedly worth $21 billion.  See Def. Reply

Mem. at 19, 21 n.*, 21-22.

1.      Chandra's Request to Proceed IFP

In Chandra's request to proceed IFP he stated that he was last employed from July 1,

2005 to June 30, 2007, and that during this time he earned approximately $4,000 per month.  IFP

---

[2]  In their reply brief defendants argue that plaintiff's hostile environment claim fails to
state a claim on which relief can be granted and that it must be dismissed for failure to exhaust.
See Def. Reply Mem. at 17-18, 18 n.*.  Because these arguments were made for the first time in
a reply brief, we do not consider them now.  See, e.g., Schuh v. Druckman & Sinel, LLP,
602 F. Supp. 2d 454, 465 n.7 (S.D.N.Y. 2009).

Request ¶ 2.  He stated that he had $162 in a checking or savings account and that he paid $400 per month in rent.  Id. ¶¶ 4, 6.  Chandra left blank the third question on the form, however, stating: "Have you received, within the past twelve months, any money, from any source?"  Id. ¶ 3.  Chandra's request to proceed IFP was granted on July 24, 2009.  Id.

At the June 23, 2010 conference before this Court, Chandra was directed to submit a new, completed request to proceed IFP because he had failed to respond to the third question on the original request form.  See Letter from Steven A. Morelli and Eric S. Tilton to the Hon. Gabriel W. Gorenstein, dated June 29, 2010, and Letter from Daniel A. Cohen to Hon. Gabriel W. Gorenstein, dated July 2, 2010 (annexed as Ex. G to Notice of Motion).  Chandra submitted a new request to the Court following this conference.  See Supplemental Request to Proceed IFP (annexed as Ex. G to Notice of Motion).  This request was identical to the first except that in response to question three Chandra stated that in the twelve months preceding the submission of his first request he received three loans: one from Dr. Colin Palmer of approximately $2,500, one from Dr. Vinay Kikkeri of approximately $6,000, and one from Vivekanand Singh of approximately $3,500.  See id. ¶ 3.  Defendants issued subpoenas to Palmer, Kikkeri and Singh requesting that they produce "[a]ny documents that concern or relate to any money . . . [given], lent to or paid to Subhas Chandra . . . ."  Subpoenas: Documents to Be Produced (annexed as Ex. 4 to Cohen Reply Aff.).  Kikkeri produced two checks, one dated August 31, 2008, in the amount of $750 made payable to Chandra, and one dated April 28, 2008, in the amount of $5,000 made payable to Stephen D. Jeffries, Esq.  See Documents Responsive to Subpoenas (annexed as Ex. 5 to Cohen Reply Aff.); Cohen Reply Aff. ¶ 6.  Palmer produced two checks made payable to Chandra, one dated February 6, 2008, in the amount of $200 stating "loan" in the memo line, and one dated September 30, 2009, in the amount of $2,000.  See Documents

12

Responsive to Subpoenas (annexed as Ex. 6 to Cohen Reply Aff.); Cohen Reply Aff. ¶ 7.  Singh

did not produce any documents in response to the subpoena but stated that he gave Chandra cash

during the time period at issue.  See Cohen Reply Aff. ¶ 8.  According to Chandra's bank records

Chandra deposited $5,078 in his bank account between June 25, 2008 and June 29, 2009.  See

Preliminary Disclosure Pursuant to Stipulation (annexed as Ex. 7 to Cohen Reply Aff.); Cohen

Reply Aff. ¶ 9.

      2.   Analysis

The IFP statute, 28 U.S.C. § 1915(e)(2)(A), provides that "the court shall dismiss the

case at any time if the court determines that . . . the allegation of poverty is untrue . . . ."  "'[T]he

purpose of this provision is to weed out the litigants who falsely understate their net worth in

order to obtain in forma pauperis status when they are not entitled to that status based on their

true net worth.'"  Hobbs v. Cnty. of Westchester, 2002 WL 868269, at *2 (S.D.N.Y. May 3,

2002) (quoting Attwood v. Singletary, 105 F.3d 610, 613 (11th Cir. 1997)) (additional internal

quotation marks and citation omitted).  In 1996, Congress amended the statute to reinforce "the

mandatory nature of the requirement of dismissal for false allegations of poverty" by using the

language "shall dismiss" in lieu of the former "may dismiss."  Cuoco v. U.S. Bureau of Prisons,

328 F. Supp. 2d 463, 467 (S.D.N.Y. 2004) (citing Mathis v. N.Y. Life Ins. Co., 133 F.3d 546,

547 (7th Cir. 1998)) (additional citations omitted).  The Southern District of New York's form

application to proceed IFP, submitted by Chandra to the Court, also states: "I understand that the

Court shall dismiss this case if I give a false answer to any questions in the declaration."  IFP

Request at 2.

In determining whether to dismiss a case under this statute the issue is not necessarily the

accuracy of any given statement in the request but rather whether "the allegation of poverty is

untrue." 28 U.S.C. § 1915(e)(2)(A).  Here, Chandra improperly failed to answer the question

about his past receipt of money – but it is not clear that he was not IFP-eligible even with the

inclusion of this money.  The sum of money given to him in the previous 12 months – $12,000 –

was relatively low and thus we cannot say that his "allegation of poverty" was "untrue."  28

U.S.C. § 1915(e)(2)(A).  Nor can we say that the omission of this income meant that Chandra

"intentionally misrepresented his income in an attempt to . . . avoid the payment of filing fees."

Morales v. E.I. Du Pont De Nemours & Co., 2004 WL 2106590, at *2 (W.D.N.Y. Sept. 21,

2004).

　　　　With respect to the wealth of his family, the relevance of this fact is unclear.  There has

been no showing that Chandra's family ever gives him money (let alone that it did so within the

12 months prior to the IFP application), or that Chandra has access to their money in some other

way.  Thus, we cannot say that the wealth of his family means that Chandra is not IFP-eligible.

In addition, nothing on the IFP application made inquiry about relatives' finances and thus we

can point to no misrepresentation with regard to this issue.

　　　　Accordingly, defendants' motion to dismiss pursuant to 28 U.S.C. § 1915(e)(2)(A)

should be denied.

Conclusion

　　　　The defendants' motion to dismiss (Docket # 58) should be denied.

## PROCEDURE FOR FILING OBJECTIONS TO THIS
## REPORT AND RECOMMENDATION

　　　　Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure, the parties have fourteen (14) days including weekends and holidays from service of

this Report and Recommendation to serve and file any objections.  See also Fed. R. Civ. P. 6(a),

14

(b), (d).  Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. Richard M. Berman, and to the undersigned, at 500 Pearl Street, New York, New York 10007.  Any request for an extension of time to file objections must be directed to Judge Berman.  If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal.  See Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).


Dated:  December 3, 2010
        New York, New York


                                        _____
                                        GABRIEL W. GORENSTEIN
                                        United States Magistrate Judge

(b), (d).  Such objections (and any responses to objections) shall be filed with the Clerk of the

Court, with copies sent to the Hon. Richard M. Berman, and to the undersigned, at 500 Pearl

Street, New York, New York 10007.  Any request for an extension of time to file objections

must be directed to Judge Berman.  If a party fails to file timely objections, that party will not be

permitted to raise any objections to this Report and Recommendation on appeal.  See Thomas v.

Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham,

Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).


Dated:  December 2, 2010
        New York, New York

                                                    _____
                                                    GABRIEL W. GORENSTEIN
                                                    United States Magistrate Judge